**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEANETTE TEEL TAFT, individually
and as guardian ad litem for minor
children, Onte Taft and Kimberly
Taft; ONTE TAFT, minor; KIMBERLY
TAFT, minor; HARRY TEEL, SR., as
guardian ad litem for minor
children, Harry Teel, Jr., and
Shamesa Teel; HARRY TEEL, JR.,
minor; SHAMESA TEEL, minor,
<u>Plaintiffs-Appellants,</u>

v.

TERRY VINES, Deputy Sheriff of Pitt
County, in his position as Deputy
Sheriff and in his individual

capacity; TROY BOYD, in his official                    No. 94-2293
and individual capacity as a law
enforcement officer in and for the
City of Greenville; TIM PEADEN, in
his official and individual capacity
as a law enforcement officer in and
for the City of Greenville; JOHNNY
CRAFT, in his official and individual
capacity as a law enforcement
officer in and for the City of
Greenville; BENNY DOBBS, in his
official and individual capacity as a
law enforcement officer in and for
the City of Greenville,
<u>Defendants-Appellees,</u>

and

BILLY L. VANDERFORD, Sheriff of
Pitt County in his capacity as
Sheriff and in his individual
capacity; CITY OF GREENVILLE;
NANCY JENKINS, Mayor, in her
official and individual capacity;
CHARLES HINMAN, Chief of Police,
City of Greenville, in his official
capacity; KEVIN M. SMELTZER, Police
Officer of the City of Greenville, in
his official and individual capacity,
Defendants.

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
James C. Fox, Chief District Judge.
(CA-93-109-4-F)

Argued: April 2, 1996

Decided: May 14, 1996

Before WILKINSON, Chief Judge, and RUSSELL, WIDENER,
HALL, MURNAGHAN, ERVIN, WILKINS, NIEMEYER,
HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ,
Circuit Judges, sitting en banc.

_____

Affirmed by published per curiam opinion. Judge Michael wrote an
opinion concurring in part and dissenting in part. Judge Murnaghan
wrote a dissenting opinion, in which Judge Ervin joined.

_____

**COUNSEL**

**ARGUED:** Robert Lee White, WHITE & SHEARIN-WHITE,
Greenville, North Carolina, for Appellants. Kenneth Ray Wooten,

WARD & SMITH, P.A., New Bern, North Carolina, for Appellees.
**ON BRIEF:** John R. Green, Jr., WARD & SMITH, P.A., New Bern, North Carolina, for Appellees.

_____

**OPINION**

PER CURIAM:

On July 30, 1993, the Appellants, Jeanette Teel Taft, Onte Taft, Kimberly Taft, Harry Teel, Jr., and Shamesa Teel, filed suit pursuant to 42 U.S.C. § 1983 against the Appellees, various Pitt County and City of Greenville law enforcement officers. The Appellants alleged, inter alia, that the police officers had violated the Fourth Amendment of the United States Constitution by (1) stopping the Appellants' car without reasonable suspicion and (2) using excessive force in executing the search attendant to that stop. The district court granted summary judgment to the police officers on both of these and all other claims.

On appeal, a panel of this court unanimously affirmed the district court with respect to the first issue, finding that the "stop and frisk" was supported by "reasonable suspicion." Taft v. Vines, 70 F.3d 304, 310 (4th Cir. 1995). Therefore, the officers were entitled to qualified immunity as to "the actual decision to stop Appellant Taft's car and to frisk the occupants." Id. at 311 (emphasis in original). However, a divided panel concluded that the officers' "entitlement to qualified immunity as to the Appellants' excessive force claims was incorrectly granted by the district court at the summary judgment stage" and so reversed the "district court's grant of summary judgment on this issue, and remand[ed] the case for trial on the § 1983 excessive force claims." Id. at 312. A divided panel also concluded that the district court erred in denying Appellants' "motion for continuance of the summary judgment hearing in order to allow for time to conduct discovery on the issue of qualified immunity." Id. at 316.

We granted the officers' petition for rehearing and suggestion for rehearing en banc and vacated the panel opinion. With regard to the first issue, we now adopt the unanimous panel opinion. See part II A of the panel opinion, 70 F.3d at 310-12.

3

With regard to the second issue, the excessive force claims, we now adopt the dissenting opinion. See 70 F.3d at 317-21 (Motz, J., dissenting). Thus, for the reasons set forth in the dissenting opinion, we affirm the district court's grant of summary judgment on the excessive force claims. We reiterate that we sympathize with the Appellants; the search undoubtedly was a frightening experience. Although the officers maintain that the search was conducted in accordance with appropriate police procedures, we need not and do not reach this question. The issue presented by the excessive force claims is not whether the officers violated police procedures, or even whether they, in fact, violated the Fourth Amendment. Rather, the question is whether, confronted with the facts of this case, reasonable police officers should have known that clearly established constitutional law prohibited the methods used in the search. We cannot so hold. Accordingly, the officers were entitled to summary judgment on the basis of qualified immunity on the excessive force claims.

In view of these holdings, the motion for continuance in order to conduct discovery is necessarily moot.

The order of the district court granting summary judgment to the officers is in all respects

AFFIRMED.

MICHAEL, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion except as it relates to the excessive force claim of fifteen-year-old Onte Taft. As for that claim, I believe there are genuine issues of material fact precluding summary judgment on the police officers' defense of qualified immunity.

In his affidavit Officer Vines concedes that he knew Onte Taft was not Wooten immediately after Onte exited his mother's vehicle. Also, the police officers admit that Onte was placed on his knees in the front of a patrol car's headlights while he was searched and handcuffed. While such conduct likely (and understandably) scared Onte, if this was all that was done, then I would agree that the police officers would be entitled to summary judgment. But this was not all that was done.

4

In her affidavit Jeanette Taft (Onte's mother) makes clear that an officer held a shotgun within six to seven inches of Onte's head while he was searched and handcuffed. At no time did Onte make any threatening movements or gestures, and a second police vehicle separated and protected the officers searching Onte from his mother's vehicle (the automobile in which Wooten might still be hiding). Officer Vines does not deny these facts.

Moreover, though the police officers' affidavits share a uniformity in style and substance, there is an important difference. While most of the officers claim they never "point[ed a] gun directly at anybody's head or press[ed] it against anyone's person," Officer Vines' affidavit states that he "never placed [his] weapon against or near the head of any child or any other occupant of the vehicle." Officer Vines does not therefore deny that he pointed his shotgun at someone's head (i.e., he does not deny pointing his shotgun at the head of fifteen-year-old Onte while Onte was on his knees facing the headlights of the patrol car). In addition, Officer Vines admits that he had a shell chambered in his shotgun during this time.

I believe that this evidence raises genuine issues of material fact on whether the police officers' conduct as it related to Onte Taft was excessive and whether a reasonable police officer should have known that clearly established law prohibited such conduct. See Baker v. Monroe Township, 50 F.3d 1186, 1192-94 (3d Cir. 1995) (reversing grant of summary judgment in favor of supervising police officer when warrant did not authorize search and detention of plaintiffs and evidence presented factual issue of whether supervising officer actually knew and acquiesced to other officers handcuffing, detaining, and pointing guns directly at plaintiffs); McDonald v. Haskins, 966 F.2d 292, 295 (7th Cir. 1992) (defendant police officer not entitled to qualified immunity when officer held gun to minor child's head and threatened to pull the trigger).

I would therefore reverse the grant of summary judgment as it relates to Onte Taft's claim of excessive force. I respectfully dissent to that extent.

MURNAGHAN, Circuit Judge, dissenting:

On the evening of February 9, 1993, the plaintiffs--a mother, her minor children, and the children's minor cousins--and a friend had

attended a basketball game and were returning home. First they took the young friend home, in an area not far removed from where a murder suspect wanted by the police was believed to be located. The plaintiffs had no connection whatsoever with the suspect. While the plaintiffs were driving toward their own homes, the police--believing that the plaintiffs had just exited the mobile home park in which the suspect resided--concluded that the murder suspect might be concealed in the plaintiffs' car. The officers stopped the car and required each of the plaintiffs to exit the vehicle. Up to that point, I believe the officers were qualifiedly immune.

What happened thereafter, however, is a disputed factual matter which should not have been resolved against the plaintiffs on the officers' motion for summary judgment. "[O]n summary judgment, `the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences.'" Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995) (quoting Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir. 1991)). In their verified complaint,* the plaintiffs alleged that excessive force had been used against them in several respects. They alleged that, even though they each complied without protest when ordered to climb out of the car, the officers' guns were frighteningly cocked and clicked and aimed at them. They alleged that two of them were handcuffed and made to sit in police vehicles and that one of them was made to kneel in front of one of the police vehicles, facing the headlights. And they alleged that they were subjected to intensive physical searching--the female plaintiffs alleged that the officers had "fondl[ed] and mishandl[ed]" their breasts, groins, and buttocks, and the male plaintiffs alleged that their groins had been grabbed with such force that they suffered "great pain and physical harm."

No weapons were discovered to be in the plaintiffs' possession and the suspicion that the suspect was in the plaintiffs' vehicle turned out to be entirely unfounded.

_____

*We have held that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

6

The officers contested many of the plaintiffs' allegations, contending, for example, that they lowered their weapons as each child exited the car, that they did not cock and click their weapons in an intimidating manner, and that they conducted no more than routine pat-down searches. Because genuine issues of material fact existed with respect to the nature of the officers' conduct, and because the proper outcome of the case turned on whose description of the officers' conduct was to be believed, summary judgment on qualified immunity grounds was inappropriate. See, e.g., Rainey v. Conerly, 973 F.2d 321, 324 (4th Cir. 1992) (holding that the district court properly denied the defendant's immunity-based motion for summary judgment because "a determination of what actually happened is absolutely necessary to decide whether [the defendant] could reasonably have believed that his actions were lawful"). Taking the plaintiffs' allegations as true, I cannot accept the majority's finding that a reasonable officer would not have known "that clearly established constitutional law prohibited the methods used in the search." See ante at 4. I would therefore reverse the district court's finding on summary judgment that the officers were entitled to qualified immunity. Indeed, by sustaining the district court's ruling, the majority seems to me to come perilously close to granting police officers absolute immunity.

Decent police behavior was owed to the plaintiffs; a weakly based suspicion that a murder suspect was located in the plaintiffs' car falls far short of justifying the officers' actions. Though police officers surely are needed to protect us from criminals, I believe the majority unwisely and unnecessarily moves us toward a point at which we will need protection from police officers themselves.

Accordingly, I would have permitted the case to go to trial. Once at trial, the officers might very well have successfully defended their actions and demonstrated entitlement to qualified immunity. But at the summary judgment stage, with material facts in dispute, an award of qualified immunity was not appropriate.

I therefore must dissent. Judge Ervin joins in this dissenting opinion.

7